**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

FILED
Scott L. Poff, Clerk
United States District Court

By staylor at 9:22 am, Dec 06, 2017

XAVIER DANIELS,

      Plaintiff,

  v.

WARDEN MARTY ALLEN; TREVONZA
BOBBITT; UNIT MANAGER
HUTCHINSON; WARDEN ROBERT
TOOLE; VALERIE JACKSON; and
COUNSELOR BATEMAN,[1]

      Defendants.

CIVIL ACTION NO.: 6:17-cv-45

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, currently housed at Georgia State Prison in Reidsville, Georgia, submitted a Second Amended Complaint in the above captioned action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement.  (Doc. 10.)  For the reasons set forth below, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims for:

1) monetary damages against Defendants in their official capacities;

2) deliberate indifference to safety for failure to intervene in the fight against all Defendants;

3) deliberate indifference to safety as to dorm assignment against Defendants Jackson, and Bateman;

4) all claims against Defendant Hutchinson;

5) deliberate indifference to medical needs as to Defendant Toole;

6) due process violations against all Defendants; and

7) equal protection violations against all Defendants.

---

[1]   Plaintiff filed a Second Amended Complaint removing Unit Manager Grant and Lt. Beasley as Defendants.  Because Plaintiff's amended Complaint is the controlling Complaint, the Court **DIRECTS** the Clerk of Court to remove Defendants Grant and Beasley upon the docket and record of this case.

Additionally, the Court should **DENY** Plaintiff's claims for preliminary injunctive relief. However, Plaintiff's allegations arguably state colorable claims for relief against Defendants Allen, Bobbitt, Toole, Jackson, and Bateman. Accordingly, the Court **DIRECTS** the United States Marshal to serve Defendants Allen, Bobbitt, Toole, Jackson, and Bateman with a copy of Plaintiff's Second Amended Complaint, (doc. 10), and this Order.

### PLAINTIFF'S ALLEGATIONS[2]

The crux of Plaintiff's Second Amended Complaint revolves around an attack he suffered at the hands of fellow inmates on November 21, 2016. (Doc. 10, p. 15.) Plaintiff claims his prison profile indicates that he should not be housed with any affiliated members of the Blood gang. Additionally, because of a 2014 attack on his person, Plaintiff is supposed to be placed in a less-violent dorm. Despite this information, Plaintiff alleges he was released into general population on November 18, 2016, at dorm F-2, "the most violent/gang-infested building in the facility." (Id.)

Just three days later, on November 21, 2016, a prisoner broke into Plaintiff's dorm and "rushed the Plaintiff with two-homemade knives and continued to attack the plaintiff in the day-room area directly in front of the building's control booth and in front of the dormitory's security cameras for at least ten minutes until the other prisoners in the dormitory chased him out." (Id.) As a result of this attack, Plaintiff suffered stab wounds "in both palms of his hands, directly over his heart, in the shoulder, and in his face directly under his left eye." (Id.) In the immediate aftermath, other prisoners hid Plaintiff away, bandaged his wounds, and directed Plaintiff "not to say anything or he would be done much worse if he snitched." (Id.)

---

[2] The below recited facts are taken from Plaintiff's Second Amended Complaint, (doc. 10), the operative Complaint in this action, and are accepted as true, as they must be at this stage. See Lowery v. Ala. Power Co., 483 F.3d 1184, 1219 (11th Cir. 2007) ("[A]n amended complaint supersedes the initial complaint and becomes the operative pleading in the case.").

Plaintiff further alleges that on November 22, 2016, Defendant Jackson saw Plaintiff's injuries during bed check, but ignored his wounds.  (Id. at p. 16.)  The following day, Plaintiff claims Defendants Allen, Bobbitt, and Jackson saw Plaintiff's injuries during inspection, but "all they did was shake their heads, laugh, and walk out." (Id. at p. 17.)  Plaintiff reiterates that he "did not say anything due to fearing for his life."  (Id.)  Also on November 23, 2016, Defendant Bateman approached Plaintiff and also noticed Plaintiff's injuries.  When Defendant Bateman asked if Plaintiff was alright, Plaintiff claims he ignored Defendant Bateman because other prisoners were standing around.  (Id.)

Later on that day, Officer Flowers escorted Plaintiff to medical for treatment.  During the examination, Defendants Allen and Bobbitt questioned Plaintiff about his injuries and how he received them.  Plaintiff claims that he "just ignored them" because he "did not feel safe telling both defendants anything when they both deliberately placed his life and health in harm's way by knowingly going against . . . Defendant Toole's orders that Plaintiff could not be housed with any validated/affiliated Blood gang members." (Id. at p. 18.)  After the examination, the nurse allegedly informed Defendants Allen and Bobbitt that Plaintiff needed serious medical treatment. However, Defendants Allen and Bobbitt directed the nurse to simply bandage Plaintiff up so that he could be escorted to lockdown.  (Id.)  Plaintiff alleges that he has been on segregation since December 2, 2016.  (Id. at p. 19.)

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983.  Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which

shows that he is entitled to redress.  Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous, malicious, or fails to state a claim upon which relief may be granted.  28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii).  Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity.  Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances).  Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'"  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010).  Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice.  Twombly, 550 U.S. at 555.  Section 1915 also

"accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed.  Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys[.]") (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)).  However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules.  McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

### I.     Claims for Monetary Damages Against Defendants in Their Official Capacities

Plaintiff cannot sustain a Section 1983 claim for monetary damages against Defendants in their official capacities.  States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty.  Alden v. Maine, 527 U.S. 706, 712–13 (1999).  Section 1983 does not abrogate the well-established immunities of a state from suit without its consent.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989).  Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under Section 1983.  Id. at 71.  Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as employees of the Georgia Department of Corrections.  Accordingly, the Eleventh

Amendment immunizes these actors from suit in their official capacities.  See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989).  Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims against Defendants in their official capacities for monetary relief.  The Court should **DISMISS** these claims.

## II.     Deliberate Indifference

A deliberate indifference claim requires analysis of the Eighth Amendment proscription against cruel and unusual punishment.  That proscription imposes a constitutional duty upon prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care."  Farmer v. Brennan, 511 U.S. 825, 832 (1994).

To show an Eighth Amendment violation, a plaintiff must "allege facts sufficient to show '(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.'"  Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016) (quoting Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995)).  The Court assesses the first element—a substantial risk of serious harm—under an objective standard.  Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014).  The objective component requires a plaintiff to show that the condition he complains of is sufficiently serious to violate the Eighth Amendment.  Hudson v. McMillian, 503 U.S. 1, 8 (1992); Chandler v. Crosby, 379 F.3d 1278, 1289–90 (11th Cir. 2004).

The second element—defendants' deliberate indifference to a substantial risk of serious harm—has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."  Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)).[3]  The

---

[3]  Eleventh Circuit case law on whether a claim of deliberate indifference requires "more than *gross* negligence" or "more than *mere* negligence" is contradictory.  Compare Goebert v. Lee Cty., 510 F.3d

"subjective knowledge of a risk of serious harm" component requires a defendant to have "actual knowledge that an inmate faced a substantial risk of serious harm[.]"  Caldwell, 748 F.3d at 1099.  Thus, "[t]o be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.'"  Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 F. App'x 9, 14 (11th Cir. 2010) (quoting Purcell ex rel. Estate of Morgan v. Toombs Cty., 400 F.3d 1313, 1319–20 (11th Cir. 2005)).  "[S]imple negligence is not actionable under § 1983, and a plaintiff must allege a conscious or callous indifference to a prisoner's rights."  Id. (quoting Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982)).

### A.  Deliberate Indifference to Safety

The Eighth Amendment "imposes a duty on prison officials" to "take reasonable measures to guarantee the safety of the inmates."  Caldwell, 748 F.3d at 1099–100.  While "[p]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners[, i]t is not, however, every injury suffered by one prisoner at the hands of another that translates into a constitutional liability. . . ."  Purcell ex rel. Estate of Morgan v. Toombs Cty., 400 F.3d 1313, 1319 (11th Cir. 2005) (citing Farmer, 511 U.S. at 1319).  Rather, a prison official must be faced with a known risk of injury that rises to the level of a "strong likelihood rather than a mere possibility" before his failure to protect an inmate can be said to constitute deliberate indifference.  Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990).

---

1312, 1327 (11th Cir. 2007), with Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011).  In Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016), the Eleventh Circuit found "more than mere negligence" to be the appropriate standard.  841 F.3d at 1223 n.2.  Even so, at least two Eleventh Circuit appendix cases post-Melton have continued to use the "gross negligence" standard.  See, e.g., Woodyard v. Ala. Dep't of Corr., 2017 WL 2829376 (11th Cir. June 30, 2017); Sifford v. Ford, 2017 WL 2874517 (11th Cir. July 6, 2017).  However, because the Eleventh Circuit explicitly addressed this issue in the Melton case, this Court will apply the "more than mere negligence" standard.

### (1)     Failure to Intervene in Fight

Plaintiff appears to raise a deliberate indifference claim for Defendants' failure to intervene in the November 21, 2016, prison fight.  "Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence."  Terry v. Bailey, 376 F. App'x 894, 896 (11th Cir. 2010) (citing Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 2010);[4] see also Murphy v. Turpin, 159 F. App'x 945, 948 (11th Cir. 2005) (applying deliberate indifference standard to claim that prison official failed to intervene in inmate-on-inmate assault).  "However, in order for liability to attach, the officers must have been in a position to intervene."  Id. (internal citation omitted).

Plaintiff contends that he was attacked in front of the control booth and dorm security cameras for ten minutes, (doc. 10, p. 15), and Defendants did nothing.  However, Plaintiff fails to allege that the fight occurred in Defendants' presence or that Defendants were otherwise aware of the risk to Plaintiff's safety during the fight.  For instance, Plaintiff does not allege whether Defendants were in the control booth, viewed the security camera footage during the fight, or were otherwise made aware of the attack.  Without such factual allegations, Plaintiff fails to show that prison officials knew with a "strong likelihood" that Plaintiff was being attacked or would be attacked during the November 21, 2016 fight.  Brown, 894 F.2d at 1537.  Moreover, without any allegations of Defendants' location or status during the attack, Plaintiff has failed to plausibly allege that any Defendant was in a position to intervene in the fight.  Accordingly, Plaintiff fails to state a claim that Defendants were deliberately indifferent by failing to intervene in the November 21, 2016, attack, and the Court should **DISMISS** these claims..

---

[4]  In Johnson v. Boyd, the Eleventh Circuit Court of Appeals noted that it has "not explicitly adopted [the] holding [in Ensley] in a situation involving an officer observing a fight between inmates."  568 F. App'x 719, 722 n.2 (11th Cir. 2014).  However, the Court need not reach this issue today because Plaintiff's claims fail even if this standard did apply.

(2)     **Dorm Assignment**

Plaintiff also raises a deliberate indifference to safety claim because Defendants improperly assigned him to high-risk dorms.  Plaintiff alleges that he was released into "the most violent/gang-infested building in the facility" where the prisoners have "easy access to home-made knives and weapons," and there is inadequate supervision.  (Doc. 10, pp. 15, 19.)  These allegations are sufficient to establish the type of "extreme" condition contemplated by the first element to an Eighth Amendment claim—whether there is a substantial risk of serious harm.  See Chandler, 379 F.3d at 1289; see also Lane, 835 F.3d 1302, 1307–08 (finding substantial risk of serious harm where plaintiff alleged dorm building was largely comprised of gang members, frequent stabbings and beatings occurred, and inmates frequently had weapons); Marsh v. Butler Cty., Ala., 268 F.3d 1014, 1027–28 (11th Cir. 2001) (enbanc) *abrogated on other grounds by* Twombly, 550 U.S. 544, 561–63 (2007) (holding that there was a substantial risk of serious harm at the pleading stage where plaintiff alleged inmates had ready access to weapons, and the prison inadequately supervised inmates).   This is especially true given that Plaintiff's file specifically stated that he be placed in a low-violence dorm and could not be placed with other Blood gang affiliated inmates.

Plaintiff also alleges sufficient facts to support the second, subjective element—that Defendants were deliberately indifferent to his substantial risk of serious harm.  Plaintiff claims that in August 2016, Defendant Hutchinson was sent by Defendant Allen specifically to inform Plaintiff that Defendant Allen "would make sure the Plaintiff was placed in an dormitory less-violent [sic] . . . due to [D]efendant Toole's document stating the plaintiff could not be housed with any affiliated members of the Blood gang."  (Doc. 10, p. 14.)  Plaintiff also contends that his Georgia Department of Corrections file indicates that he cannot be housed with other Blood

gang members.  (Id.)  These allegations are sufficient for Plaintiff to establish a plausible claim that all Defendants had actual knowledge of his substantial risk of serious harm.

However, Plaintiff cannot establish that all Defendants improperly disregarded that risk. Plaintiff fails to allege facts to support this claim against Defendants Hutchinson, Jackson, and Bateman.  While these Defendants may have known of the substantial risk of serious harm, Plaintiff does not plausibly allege that they had any ability to impact or change his dorm assignment.  See LaMarca v. Turner, 995 F.2d 1526, 1537 (11th Cir. 1993) ("Mere knowledge of the infirm conditions . . . does not establish deliberate indifference.  The plaintiffs must also demonstrate that, with knowledge of the infirm conditions, [defendant] knowingly or recklessly declined to take actions that would have improved the conditions."); Bennett, 689 F.2d at 1384 ("There can be no duty . . . to do that which is beyond the power, authority, or means of the charged party.").

Consequently, the final element of an Eighth Amendment claim—causation—is satisfied only as to Defendants Toole, Allen, and Bobbitt.  Plaintiff frequently makes the conclusory assertion that all Defendants were attempting to place him in harm's way, but only provides facts sufficient to support a claim against Defendants Toole, Allen, and Bobbitt.  Although these are supervisory Defendants, Plaintiff plausibly alleges that as the former warden, current warden, and deputy warden of security, respectively, these Defendants had the authority to make housing and classification decisions and to reassign him out of the F-2 dormitory.

Plaintiff states a plausible claim of deliberate indifference to safety as to his dorm assignment against Defendants Toole, Allen, and Bobbitt.  However, the Court should **DISMISS** Plaintiff's claims of deliberate indifference as to his dorm assignment against all other Defendants.  Additionally, because Plaintiff makes no other specific factual allegations against

Defendant Hutchinson, the Court should **DISMISS** Plaintiff's claims against Defendant Hutchinson in its entirety.

### B.  Deliberate Indifference to Medical Needs Claims

The standard for cruel and unusual punishment in the medical care context, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate.  Farmer, 511 U.S. at 828.  However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105).  Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

Thus, in order to prove a deliberate indifference to medical care claim, similar to any other deliberate indifference claim, a prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct."  Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007).  As to the first component, a medical need is serious if it "'has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  Id. (quoting Hill, 40 F.3d at 1187).  Under the second, subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety."  Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995).  Thus, the subjective component requires an inmate to prove: "(1) subjective knowledge of a risk of serious

harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).

"Conduct that is more than mere negligence includes:  (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011).  Additionally, a defendant who "delays necessary treatment for non-medical reasons" or "knowingly interfere[s] with a physician's prescribed course of treatment" may exhibit deliberate indifference.  Id. (citations omitted).

In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of medical care received, the Court considers "the reason for the delay and the nature of the medical need." Farrow v. West, 320 F.3d 1235, 1246 (11th Cir. 2003) (citing McElligott, 182 F.3d at 1255).  When a claim turns on the quality of treatment provided, however, "'a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment' does not support a claim of deliberate indifference." Melton, 841 F.3d at 1224 (quoting Harris, 941 F.2d at 1505).  In other words, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 104 (1976).  Furthermore, deliberate indifference is not established when an inmate receives medical care, but "may have desired different modes of treatment." Hamm v. Dekalb Cty., 774 F.2d 1567, 1575 (11th Cir. 1985).

Plaintiff alleges that at various points on November 22, 2016, Defendants Jackson, Allen, Bobbitt, and Bateman saw his untreated wounds, but did not take him to medical.  (Doc. 10, pp. 16–17.)  Although Plaintiff did not request medical care, his multiple stab wounds "are so obvious that even a lay person would easily recognize the necessity for a doctor's attention."

Goebert, 510 F.3d at 1326 (quoting Hill, 40 F.3d at 1187).  Plaintiff mentions that the other prisoners somehow stopped the bleeding before the abovementioned Defendants saw his wounds.  (Doc. 10, p. 15.)  However, Plaintiff's factual allegations are still sufficient to state a plausible claim of deliberate indifference to medical needs against Defendants Jackson, Allen, Bobbitt, and Bateman for not ensuring that he receive medical treatment.

Additionally, Plaintiff alleges that Defendants Allen and Bobbitt specifically denied him medical care even after the nurse examined Plaintiff and recommended "serious medical treatment."  (Id. at p. 18.)  Plaintiff claims that Defendants Allen and Bobbitt "got angry" when Plaintiff would not tell them what happened and directed the nurse to "just give the plaintiff some bandages and ointment so he can be put on lockdown."  (Id.)  These facts create a separate, additional claim of deliberate indifference to medical needs against Defendants Allen and Bobbitt.  See Nam Dang by and through Vina Dang v. Sheriff, Seminole Cty. Fla., 871 F.3d 1272, 1280 (11th Cir. 2017) ("An official disregards a serious risk by more than mere negligence 'when he [or she] knows that an inmate is in serious need of medical care, but he [or she] fails or refuses to obtain medical treatment for the inmate.") (citations and quotations omitted).

Based on these allegations, Plaintiff has stated a plausible claim of deliberate indifference to medical needs against Defendants Allen, Bobbitt, Jackson, and Bateman.  However, because Plaintiff fails to allege that any other Defendant denied his access to medical treatment or otherwise exhibited deliberate indifference to his medical needs, the Court should **DISMISS** Plaintiff's deliberate indifference to medical needs claims against all other Defendants.

### III.   Due Process Claims

#### A.   Procedural Due Process

A Section 1983 action alleging a procedural due process violation requires proof of three elements: "deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally-inadequate process." Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994). The Eleventh Circuit Court of Appeals has identified two situations in which a prisoner—already deprived of liberty in the traditional sense—can be further deprived of liberty such that procedural due process protections are required: (1) when there is a "change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court[ ]"; and (2) when the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Kirby v. Siegelman, 195 F.3d 1285, 1291 (11th Cir. 1999) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

Plaintiff fails to allege an appropriate liberty interest in his Complaint. Although Plaintiff claims that he was placed in segregation without the appropriate process, Plaintiff does not claim, much less present plausible factual allegations, that this confinement "essentially exceeds the sentence imposed by the court" or imposes an "atypical and significant hardship" in relation to the ordinary incidents of being in prison. Accordingly, Plaintiff fails to state a proper procedural due process claim.

#### B.   Substantive Due Process

The substantive component of the Due Process Clause "provides heightened protection against government interference with certain fundamental rights[.]" Washington v. Glucksberg,

521 U.S. 702, 718–19 (1997) (internal citations omitted).  If Plaintiff has a fundamental right, then the government may not infringe on that right unless it proves that the limitation is "narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993).

Here, Plaintiff claims that he has a fundamental right to be free from administrative segregation from the prison's general population.  This right is not already enumerated within the Supreme Court's "substantive-due-process line of cases."  Kerry v. Din, ___ U.S. ___, 135 S. Ct. 2128, 2135 (June 15, 2015).  Furthermore, the Supreme Court's decisions "have consistently refused to recognize more than the most basic liberty interests in prisoners."  Id.  These interests do not include freedom from more adverse conditions of confinement.  Meachum, 427 U.S. at 224–25.  Thus, there is no "objectively, deeply rooted" history and practice in this Nation to be free from segregation or even a segregation with more adverse conditions, and thus, no fundamental liberty right.  See Glucksberg, 521 U.S. at 720–21 (internal quotations and citations omitted).  Accordingly, Plaintiff fails to state a proper substantive due process claim.

Thus, the Court should **DISMISS** Plaintiff's due process claims.

## IV.    Equal Protection Claims

To state a valid Equal Protection claim, a prisoner must show: (1) that he has been treated differently from other "similarly situated" inmates, and (2) that this discriminatory treatment is based upon a constitutionally impermissible basis, such as race or national origin.  Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001) (per curiam).  Additionally, a prisoner must demonstrate that the defendants were motivated by a discriminatory intent or purpose.  See Parks v. City of Warner Robins, 43 F.3d 609, 616 (11th Cir. 1995) (requiring "proof of discriminatory intent or purpose" to show an Equal Protection Clause violation); Elston v. Talladega County Bd. of

Educ., 997 F.2d 1394, 1406 (11th Cir. 1993) (requiring a plaintiff to demonstrate that the challenged action was motivated by an intent to discriminate in order to establish an equal protection violation).  Potential indicators of discriminatory intent include "a clear pattern of disparate impact, unexplainable on grounds other than [race or national origin]; the historical background of the challenged decision or the specific events leading up to the decision; procedural or substantive departures from the norm; and the legislative or administrative history of the challenged statute."  Parks, 43 F.3d at 617 (citation omitted).

Plaintiff makes conclusory allegations throughout his Complaint that Defendants violated his equal protection rights.  However, Plaintiff fails to provide any facts to support this claim, much less facts showing that he has been treated differently from other similarly situated inmates.  Because Plaintiff simply provides "an unadorned, the defendant-unlawfully-harmed-me accusation," his Complaint fails to support a claim of equal process violations.  Iqbal, 556 U.S. at 678 (citations omitted).

Accordingly, the Court should also **DISMISS** Plaintiff's equal protection claims.

## V.    Request for Preliminary Injunction

To be entitled to a preliminary injunction or a temporary restraining order, the movant must show: (1) a substantial likelihood of ultimate success on the merits; (2) an injunction or protective order is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the injunction or protective order would inflict on the non-movant; and (4) the injunction or protective order would not be adverse to the public interest.  Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225–26 (11th Cir. 2005).  In this Circuit, an "injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the

'burden of persuasion' as to the four requisites." Horton v. City of Augustine, 272 F.3d 1318, 1326 (11th Cir. 2001).

If a plaintiff succeeds in making such a showing, then "the court may grant injunctive relief, but the relief must be no broader than necessary to remedy the constitutional violation." Newman v. Ala., 683 F.2d 1312, 1319 (11th Cir. 1982).   Accordingly, where there is a constitutional violation in the prison context, courts traditionally are reluctant to interfere with prison administration and discipline, unless there is a clear abuse of discretion.  See Procunier v. Martinez, 416 U.S. 396, 404–05 (1974) ("Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration [because] . . . courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform."), *overruled on other grounds by* Thornburgh v. Abbott, 490 U.S. 401 (1989).  In such cases, "[d]eference to prison authorities is especially appropriate."   Newman, 683 F.2d at 1320–21 (reversing district court's injunction requiring release of prisoners on probation because it "involved the court in the operation of the State's system of criminal justice to a greater extent than necessary" and less intrusive equitable remedy was available).

Plaintiff has not shown that he has satisfied the prerequisites in order to be entitled to a preliminary injunction.  Specifically, Plaintiff has not shown the likelihood of success on the merits of his claims.  This is not to say that Plaintiff will not be able to ultimately obtain some form of injunctive relief in this case.  However, he has not made the requisite showing at this time to obtain the extraordinary relief he currently seeks.  Therefore, the Court should **DENY** his request for a preliminary injunction.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims for: monetary damages against Defendants in their official capacities; deliberate indifference to safety for failure to intervene against all Defendants; deliberate indifference to safety as to dorm assignment against Defendants Jackson and Bateman; all claims against Defendant Hutchinson, deliberate indifference to medical needs claims as to Defendant Toole; due process claims against all Defendants; and equal protection claims against all Defendants.  I further **RECOMMEND** that the Court **DENY** Plaintiff's claims for preliminary injunctive relief. However, Plaintiff's allegations arguably state colorable claims for relief against Defendants Allen, Bobbitt, Toole, Jackson, and Bateman.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A

party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the Plaintiff.

## REMAINING CLAIMS AND DEFENDANTS

As stated above, Plaintiff's Second Amended Complaint arguably states colorable claims against Defendants Allen, Bobbitt, and Toole for deliberate indifference to safety as to dorm assignment and against Defendants Allen, Bobbitt, Jackson, and Bateman for deliberate indifference to medical needs.  Consequently, a copy of Plaintiff's Second Amended Complaint, (doc. 10), and a copy of this Order shall be served upon Defendants Allen, Bobbitt, Toole, Jackson, and Bateman by the United States Marshal without prepayment of cost.  The Court also provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.

## <u>INSTRUCTIONS TO DEFENDANTS</u>

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs that service be effected by the United States Marshal.  Fed. R. Civ. P. 4(c)(3).  In most cases, the marshal will first mail a copy of the complaint to the defendant by first-class mail and request that the defendant waive formal service of summons.  Fed. R. Civ. P. 4(d); Local Rule 4.7.  Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver.  Fed. R. Civ. P. 4(d)(2).  Generally, a defendant who timely returns the waiver is not required to answer the complaint until sixty (60) days after the date that the marshal sent the request for waiver.  Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of Plaintiff upon oral examination.  Fed. R. Civ. P. 30(a).  Defendants are further advised that the Court's standard 140 day discovery period will commence upon the filing of the last answer.  Local Rule 26.1.  Defendants shall ensure that all discovery, including Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

In the event that Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30.  As Plaintiff will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the deposition and advise him that he may serve on Defendants, in a sealed envelope, within ten (10) days of the notice of deposition, written questions Plaintiff wishes to propound to the witness, if any.  Defendants shall present such questions to the witness seriatim during the deposition.  Fed. R. Civ. P. 30(c).

## <u>INSTRUCTIONS TO PLAINTIFF</u>

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon his attorney, a copy of every further pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or his counsel.  Fed. R. Civ. P. 5.  "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number."  Fed. R. Civ. P. 10(a).

<u>Plaintiff is charged with the responsibility of **immediately** informing this Court and defense counsel of any change of address during the pendency of this action.  Local Rule 11.1.  Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this case.</u>

Plaintiff has the responsibility for pursuing this case.  For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery.  See generally, Fed. R. Civ. P. 26, *et seq*.  The discovery period in this case will expire 140 days after the filing of the last answer.  Local Rule 26.1.  Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period.  Local Rule 26.1.  Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial.  Local Rule 26.4.

Interrogatories are a practical method of discovery for incarcerated persons.  See Fed. R. Civ. P. 33.  Interrogatories may be served only on a party to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are not named as a defendant.  Interrogatories are not to contain more than twenty-five (25) questions.  Fed. R. Civ. P. 33(a).  If Plaintiff wishes to propound more than twenty-five (25) interrogatories to a party, Plaintiff must have permission of the Court.  If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorney for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery.  Fed. R. Civ. P. 26(c); 37(a)(2)(A); Local Rule 26.7.

Plaintiff has the responsibility for maintaining his own records of the case.  If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page.  **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the**

collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution.  Fed. R. Civ. P. 41; Local Rule 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which may be initiated by Defendants.  Upon no less than five (5) days' notice of the scheduled deposition date, Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action.  Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, <u>including dismissal of this case</u>.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is <u>required</u> to prepare and file his own version of the Proposed Pretrial Order.  A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

<u>ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING<br>MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT</u>

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen (14) days of its service.  "Failure to respond shall indicate that there is no opposition to a motion."  Local Rule 7.5.  Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants' motion.  Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion. Local Rules 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should Defendants' motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest Defendants' statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 6th day of December, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA