IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

FILED
Scott L. Poff, Clerk
United States District Court

By staylor at 4:29 pm, Jan 03, 2020

| | |
|---|---|
| XAVIER DANIELS,<br><br>    Plaintiff,<br><br>    v.<br><br>WARDEN MARTY ALLEN, et al.,<br><br>    Defendants. | CIVIL ACTION NO.: 6:17-cv-45 |

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motions to Dismiss, docs. 16, 29, 34, and Plaintiff's Motions for Appointment of Counsel, Default Judgment, and an Evidentiary Hearing. Docs. 20, 36, 43. For the reasons below, I **RECOMMEND** the Court **GRANT** Defendants' Motions and **DISMISS** Plaintiff's claims of deliberate indifference to safety in dormitory assignment and as to serious medical needs. However, I do not recommend dismissal of Plaintiff's Complaint in full; rather, I find Plaintiff states a non-frivolous claim for failure to protect, which the Court has not previously addressed in this case. Accordingly, should the Court adopt my recommendation as to Defendants' Motions to Dismiss, Defendants Allen, Hutcheson, and Bobbitt shall have 21 days from that Order to file an answer or pre-answer motion to dismiss as to this remaining claim. Finally, I **DENY** Plaintiff's Motions for Appointment of Counsel, Default Judgment, and an Evidentiary Hearing.

## BACKGROUND

Plaintiff's claims arise out of a November 21, 2016 incident where Plaintiff alleges a fellow inmate at Georgia State Prison ("GSP") attacked him. Doc. 10 at 15. The attack occurred after Plaintiff's release into general population on November 18, 2016, despite a notice on his

prison profile indicating he should not be housed with any affiliated members of the Bloods gang.  Id.  Just three days later, a prisoner broke into Plaintiff's dorm and "rushed the Plaintiff with two-homemade knives and continued to attack the plaintiff in the dayroom area directly in front of the building's control booth and in front of the dormitory's security cameras for at least ten minutes until the other prisoners in the dormitory chased him out."  Id.  Plaintiff suffered stab wounds "in both palms of his hands, directly over his heart, in the shoulder, and in his face directly under his left eye."  Id.  In the immediate aftermath, other prisoners hid Plaintiff away, bandaged his wounds, and directed Plaintiff "not to say anything or he would be done much worse if he snitched."  Id.

Plaintiff further alleges that over the next two days, Defendants, at various intervals, observed Plaintiff's injuries but did nothing to help him.  Id. at 16–17.  Plaintiff reiterates he "did not say anything due to fearing for his life."  Id.  On November 23, 2016, an officer escorted Plaintiff to the medical ward for treatment.  Id. at 18.  During the ensuing examination, Defendants Allen and Bobbitt "told the plaintiff they already knew what took place, but wanted him to tell his side."  Id. at 18.  Rather than reveal his attacker, Plaintiff "told them they have cameras to show them what happened, so check it out."  Id.  After the examination, the nurse informed Defendants Allen and Bobbitt that Plaintiff needed serious medical treatment.  However, Defendants Allen and Bobbitt allegedly directed the nurse to simply bandage Plaintiff up so that he could be escorted to lockdown.  Id.  Plaintiff remained in a segregation unit until December 1, 2016, when he was placed in a holding cell with his assailant to await transfer to Telfair State Prison ("TSP").  Id. at 18; Doc. 22-1 at 6.  Plaintiff returned to GSP on December 8, 2016.  Doc. 22-1 at 6.

Between his return to GSP and January 5, 2017, Plaintiff filed two grievances unrelated to the attack he suffered. Docs. 34-5, 34-6. The first grievance is Number 238335 ("the First Grievance"), filed on December 14, 2016. Doc. 34-5. In the First Grievance, Plaintiff complains about his placement on Tier II, which followed his transfer to TSP and his suspected connection to an attack on another inmate there. Id. The First Grievance was rejected as untimely and because inmates cannot grieve involuntary assignment to administrative segregation, as such placement has its own appeals process. Id. The First Grievance does not address the November 21, 2016 incident; therefore, the First Grievance cannot be considered an effort by Plaintiff to exhaust his administrative remedies in this case.

The second grievance is Number 235481 ("the Second Grievance"), filed on January 5, 2017. Doc. 34-6. In this grievance, Plaintiff also grieves his placement in the Tier II program and requests his return to general population. Doc. 34-6 at 2. Again, Plaintiff alleges no facts in connection to the November 21, 2016 incident. The Second Grievance was also rejected because inmates must grieve placement in the Tier program through a classification appeals process. Id. at 5. Plaintiff appealed the grievance, and the appeal was denied. Id. at 8–9. Like the First, the Second Grievance cannot constitute an attempt at exhaustion.

On January 24, 2017 and February 15, 2017, Plaintiff filed two grievances directly related to the November 21, 2016 attack and its aftermath. Docs. 34-4, 16-5. Plaintiff's third grievance is Number 236004 ("the Third Grievance") and was filed on January 24, 2017. Doc. 34-4. In the Third Grievance, Plaintiff names Defendants Hutcheson and Allen for the first time and references the November 21, 2016 incident. Id. The Third Grievance states, in pertinent part:

> On January 15th, 2017, Mr. Hutchinson[sic] informed me that him & Warden Allen's investigation revealed that I lied to staff about the incident that resulted to

3

> me being attacked by an single rival blood gang member who was addicted to meth & used 2 homemade knives to stab me on Nov. 21st, 2016 F-2 around lunch time which he breached security & ran in my dormitory due to the malfunctioning back door locks, & Mr. Allen (warden) and Mr. Hutchinson retaliated on me by placing me at risk again by placing me amongst the attacker again when transferring me on the same bus and having us in the same holding cell.

Id. at 2.  After investigating, GSP denied the grievance as unsubstantiated.  Id. at 8–9.

Grievance Number 238542 ("the Fourth Grievance"), filed on February 15, 2017, also relates to Plaintiff's existing claims.  Doc. 16-5.  In the Fourth Grievance, Plaintiff names Defendants Allen, Bobbitt, Hutcheson, Grant, and a non-defendant, and for the first time alleges deliberate indifference to medical needs and dormitory assignment.  Id. at 2.  The Fourth Grievance states, in pertinent part:

> On November 21st, 2016 I was attacked by an[sic] meth-addicted rival blood gang member which Mr. Allen, Mr. Hutchinson[sic], & Mr. Bobbitt were all knowledgeably aware of the GADSC computer stating I cannot be housed around any blood members & they all ignored the risk of their deliberate actions and I was stabbed . . .  They all decided to seek retaliation on me for me not telling them anything by transferring me amongst the assailant who could've attacked me again which was done intentionally . . . .

Id.  The Fourth Grievance was rejected as untimely.  Id. at 7–9.  Plaintiff appealed the rejection on March 29, 2017, writing for the first time that he could not previously grieve the November 21, 2016 attack because his hands were injured, no guard would help him, and he had been transferred and could not write the grievance until his return to GSP.  Id. at 10.  His appeal was rejected for untimeliness.  Id. at 11.

Plaintiff filed a Complaint on April 3, 2017, which the Court directed him to amend. Docs. 1, 7.  Following amendment, the Court found Plaintiff stated non-frivolous claims for deliberate indifference to safety concerning his dorm assignment against Defendants Allen, Bobbitt, Toole, Jackson, and Hutcheson and for deliberate indifference to medical needs against Defendants Allen, Bobbitt, Jackson, and Bateman.  Doc. 24.

4

On February 12, 2018, following the Report and Recommendation, but prior to the Court's adoption Order, five of the six Defendants in this action filed a Motion to Dismiss. Doc. 16. Thereafter, the Court ordered two of Plaintiff's original claims to proceed against Defendants Jackson and Hutcheson.[1] Doc. 24. Defendant Jackson filed an Amended Motion to Dismiss on March 21, 2018 addressing the additional claim. Doc. 29. The sixth Defendant, Hutcheson, filed a Motion to Dismiss on May 11, 2018. Doc. 34. In their Motions to Dismiss, Defendants argue Plaintiff failed to properly exhaust all administrative remedies as set out in the Georgia Department of Corrections ("GDC") grievance policy. Docs. 16-1, 25, 29-1, 32, 34-1, 41. In support of their Motions to Dismiss, Defendants provide eight exhibits: (1) an affidavit from Jeff Sikes, the grievance coordinator at GSP, doc. 16-2; (2) Standard Operating Procedure ("SOP") IIB05-0001, detailing the GDC's policy for general grievances, doc. 16-3; (3) a copy of Plaintiff's grievance history, doc. 16-4; (4) a copy of the Fourth Grievance, doc. 16-5; (5) a second affidavit from Jeff Sikes, which addresses three other grievances Plaintiff filed, doc. 34-2; (6) a copy of the Third Grievance, doc. 34-4; (7) a copy of the First Grievance, doc. 34-5; and (8) a copy of the Second Grievance, doc. 34-6.

Plaintiff responded to both Motions to Dismiss and to Defendant Jackson's Amended Motion to Dismiss.[2] Docs. 22, 30, 40. In his first Response, Plaintiff alleges Defendants

---

[1] The Court sustained Plaintiff's objections, doc. 14, for his claims of deliberate indifference to safety as to his dorm assignment against Defendants Jackson and Hutcheson, allowing the claims to proceed. Doc. 24 at 1–2.

[2] Plaintiff responded to Defendants' Motion to Dismiss on February 26, 2018. Doc. 22. Defendants responded to Plaintiff's objections on March 12, 2018. Doc. 25. Then, on March 21, 2018, Defendant Jackson filed an Amended Motion to Dismiss, doc. 29, to which Plaintiff responded on April 2, 2018, doc. 30, and Defendant Jackson replied on April 16, 2018. Doc. 32. On May 11, Defendant Hutcheson filed his Motion to Dismiss, doc. 34, to which Plaintiff responded on May 30, 2018. Doc. 40. On June 13, 2018, Defendant Hutcheson replied to Plaintiff's objections, doc. 41, and Plaintiff promptly filed a Surreply on June 20, 2018. Doc. 42.

presented a fabricated incident report in the copy of his grievance history. Doc. 22-1 at 4. He further alleges the transfer to TSP delayed him from filing his grievance as to the November 21, 2016 attack and that he waited to file his grievances until he was transferred back to GSP. Id. He also claims that his hands were too injured to file a grievance on his own and that the guards would not write it for him. Id. at 5–6. Plaintiff opposes Defendant Hutcheson's Motion to Dismiss, asserting he was never informed that one of his grievances was rejected and the prison forged his signature on the rejection notice. Doc. 40-1 at 1; Doc. 42. Plaintiff says the alleged forgery prevented him from fully exhausting his administrative remedies and demands an evidentiary hearing. Doc. 43. Plaintiff also requests appointment of counsel. Doc. 20. Finally, Plaintiff filed a premature motion for default judgment against Defendant Hutcheson. Doc. 36. The Court now reviews the parties' Motions.

## DISCUSSION

**I.    Defendants' Motions to Dismiss**

    **A.    Proper Exhaustion Under § 1997(a)**

        *1.    PLRA's Exhaustion Requirement*

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances. Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding that the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting that an inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (emphasis retained) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before*

7

initiating this suit." (emphasis retained) (quoting Higginbottom, 223 F.3d at 1261)). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

The procedural steps prisoners must follow to fully exhaust are set out by their prison's administrative grievance policies. Jones, 549 U.S. at 218; Bracero v. Sec'y, Fla. Dep't of Corr., No. 17-14278, 2018 WL 3861351, at *1 (11th Cir. Aug. 14, 2018) ("To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures established by the prison."). Proper exhaustion requires prisoners do more than simply initiate a grievance; they must correctly follow all procedural rules set out in the institution's policy—including time limits—and must appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Johnson, 418 F.3d at 1159 ("Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim."); Sewell, 2007 WL 201269 (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### 2. *Standard of Review for Exhaustion*

Failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones, 549 U.S. at 216; Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. "In response to a prisoner lawsuit, defendants may file a motion to dismiss and raise as a defense the prisoner's failure to exhaust administrative remedies." Pearson, 665 F. App'x at 867. Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." White v. Berger, 709 F. App'x 532, 541 n.4 (11th Cir. 2017) (citing Bryant, 530 F.3d at 1376); Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017); Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record." (citing Bryant, 530 F.3d at 1376)).

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d 1077, 1080–82 (11th Cir. 2008). First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero, 2018 WL 3861351, at *1. This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn, 706 F. App'x at 563–64 (citing Turner, 541 F.3d at 1082); Pavao v. Sims, 679 F. App'x 819, 824 (11th Cir. 2017). "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram v. Leu, No. 17-12319, 2019 WL 76849, at *2 (11th Cir. Jan. 2, 2019) (quoting Whatley I, 802 F.3d at 1209)); Turner, 541 F.3d at

1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209).

### 3. GDC Administrative Grievance Policies

The GDC's grievance policies are set out in Standard Operating Procedure ("SOP") IIBO5-0001. Whatley I, 802 F.3d at 1208. SOP IIB05-0001 contains the policy for general grievances, including grievances for deliberate indifference to safety and medical needs. See Whatley v. Smith (Whatley II), 898 F.3d 1072, 1074 (11th Cir. 2018) ("To exhaust administrative remedies under the Georgia Department of Corrections Standard Operating Procedures ("SOP"), inmates must follow the . . . prison grievance process outlined in SOP IIB05-0001."). Under SOP IIB05-0001, inmates may "file a grievance about any condition, policy, procedure, or action or lack thereof" which "affects the offender personally" and which is not explicitly listed in the SOP as a "non-grievable issue." Doc. 16-3 at 7.

Under SOP IIB05-0001, inmates must file grievances within 10 calendar days of becoming aware of the facts from which the grievance arises. Whatley II, 898 F.3d at 1075; Shaw v. Toole, No. 6:14-CV-48, 2015 WL 4529817, at *5 (S.D. Ga. July 27, 2015). The

grievance is screened by a Grievance Counselor, who determines whether to accept the grievance for processing or reject it.  Shaw, 2015 WL 4529817, at *5.  Inmates may "hand deliver" a completed grievance form to any counselor, who will provide the offender with a receipt.  Doc. 16-3 at 9.  If the grievance is accepted for processing, the warden has 40 days to review the grievance and determine whether to grant or deny it.  Shaw, 2015 WL 4529817, at *5.  If a grievance goes unanswered, the inmate may appeal the non-response after the warden's time to answer expires.  Id. ("An inmate can file an appeal with the Commissioner's Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or when the time allowed for the warden's decision has expired."); see also Whatley I, 802 F.3d at 1208 ("If the warden does not respond within forty days . . . the prisoner may appeal[.]").  SOP IIB05-0001 also provides that a grievance coordinator may waive the 10-day time limit to file a grievance, and the seven-day time limit to appeal a rejected grievance, for "good cause."  Doc. 16-3 at 10.  Good cause, according to the SOP, is "[a] legitimate reason involving unusual circumstances that prevented the offender from timely filing a grievance or appeal."  Id. at 3.  Examples in the SOP include serious illness and being housed away from a facility covered by the SOP.  Id.

### B.     Analysis of Plaintiff's Efforts at Exhaustion

Plaintiff alleges another inmate attacked him on November 21, 2016.  Doc. 10 at 15. Because of a 2014 attack, Plaintiff was supposed to be placed in a less-violent dorm, but GSP staff, despite this information, released him into general population.  Id.  SOP IIB05-0001 required Plaintiff to file a grievance against Defendants related to the November 21, 2016 incident by December 1, 2016 (10 days from the alleged incident).  Defendants provide four grievances as evidence, filed between December 14, 2016 and February 5, 2017.  Docs. 16, 34.

To summarize, the First and Second of those grievances are unrelated to the claims at issue;[3] the Third Grievance refers to some of the facts surrounding the November 21, 2016 incident but does not support a claim for deliberate indifference to safety in dorm assignment or to serious medical needs; and the Fourth Grievance supports Plaintiff's existing claims but was rejected as untimely.

Plaintiff does not dispute the untimeliness of the Fourth Grievance. Instead, Plaintiff, in his Response to Defendants' Motions to Dismiss, asserts he could not grieve the November 21, 2016 incident because of injuries to his hands and because he had been transferred to TSP.[4] Doc. 22-1 at 5–6; Doc. 30-1 at 3; Doc. 40-1 at 1–3. Taking Plaintiff's allegations as true, as the Court must in the first step of the Turner test, Plaintiff could not have grieved the November 21, 2016 incident before February 15, 2017 due to his injuries. Were that the end of the Court's inquiry, Plaintiff's claims related to the November 21, 2016 incident may survive dismissal.

Continuing to the second step of Turner, the Court must make specific findings to resolve disputed factual issues related to exhaustion. At the second step, the Court reviews Plaintiff's efforts to grieve Defendants' conduct related to the November 21, 2016 incident. If something outside of an inmate's control prevents him from grieving in time, he must file a grievance as soon as he is no longer subject to whatever obstacle originally obstructed him. See Bryant, 530

---

[3] Indeed, the only probative value of the First and Second Grievances is that they show Plaintiff could have grieved the November 21st incident at least as early as January 5th—when Plaintiff filed his Second Grievance—and chose not to do so.

[4] Plaintiff's other arguments are immaterial. Plaintiff contends prison staff forged his First Grievance. Doc. 22-1 at 6. He also claims he could not appeal the Third Grievance because he never received the warden's response informing him of his grievance's rejection and that Defendants' provided Warden's/Superintendent's Grievance Response is another forgery. Doc. 40-1 at 2–3; Doc. 34-4 at 9. However, the legitimacy of the First Grievance and the Warden's/Superintendent's Grievance Response does not change Plaintiff's failure to timely grieve the November 21st incident. Thus, the Court need not consider these arguments.

F.3d at 1379 (holding prisoner who failed to grieve because he feared violent reprisal should have filed grievance after transfer to another prison once threat of violence was removed). Likewise, a temporary disability only momentarily relieves a prisoner of his obligation to avail himself of all administrative remedies. Stephens v. Howerton, No. CV105-171, 2007 WL 1810242, at *4 (S.D. Ga. June 21, 2007), *aff'd*, 270 F. App'x 750 (11th Cir. 2008) (unpublished) (holding injured prisoner who failed to file a grievance once able to write did not properly exhaust his administrative remedies).

After conducting this review, the Court finds Plaintiff failed to exhaust his administrative remedies. Plaintiff asserts no sufficient excuse for his delay in filing the Fourth Grievance. Plaintiff's transfer and injuries may have temporarily relieved him of the obligation to timely file grievances, but that obligation resumed as soon as Plaintiff returned to GSP and his disability dissipated. Plaintiff returned to GSP on December 8, 2016, and his hands had healed enough to file a handwritten grievance by January 5, 2017. Yet more than a month passed before Plaintiff grieved the November 21, 2016 incident, during which Plaintiff grieved other incidents. Therefore, Plaintiff did not timely grieve Defendants' conduct and failed to exhaust his administrative remedies under § 1997e(a).[5] See Porter v. Sightler, 457 F. App'x 880, 882 (11th Cir. 2012) (affirming dismissal based on lack of exhaustion when plaintiff-inmate failed to file a grievance within 10 days of the incident as required by GDC policy). Thus, I **RECOMMEND**

---

[5] Because the Court recommends dismissal on this ground, the Court need not address Defendants' additional argument that Plaintiff initiated this lawsuit before receiving a response to his appeal of the Fourth Grievance, which would be an additional failure to exhaust administrative remedies. However, the Court notes that prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Timmons v. Sellers, No. 6:16-CV-19, 2016 WL 5109163, at *3 (S.D. Ga. Sept. 20, 2016) (citing Bryant, 530 F.3d at 1378). Although Plaintiff did appeal his rejected Fourth Grievance on March 29, he filed his complaint a mere five days later, on April 3, 2017, before the prison could render a final decision. See Okpala, 248 F. App'x at 73 (filing lawsuit before receiving final decision on appeal merits dismissal).

the Court **GRANT** Defendants' Motions to Dismiss Plaintiff's claims for deliberate indifference to safety in dorm assignment and serious medical needs.

## II.  Failure to Protect

Plaintiff sets forth additional events which occurred on December 1, 2016 and give rise to another cause of action. Specifically, Plaintiff alleges Defendants Allen, Hutcheson, and Bobbitt retaliated against him by allowing him to be kept in the same holding cell as his assailant while awaiting transfer to TSP. Doc. 10 at 18. Under the Eighth Amendment, prison officials may be liable for denying humane conditions of confinement if they know an inmate faces a substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it. Farmer v. Brennan, 511 U.S. 825, 847 (1994). Thus, Plaintiff's factual allegations are indicative of a failure to protect claim rather than retaliation.[6]

The Court has not previously addressed any claim arising from the events of December 1, 2016. In its Report and Recommendation, the Court did not discuss the December 1, 2016 incident. Doc. 11. However, Plaintiff pleaded the facts supporting the claim in his Second Amended Complaint. Doc. 10 at 18. Furthermore, following the Court's Report and Recommendation, Plaintiff objected and re-alleged a failure to protect claim based on the December 1, 2016 incident:

> The defendant's[sic] Allen and Bobbitt deliberately placed the plaintiff at risk an[sic] second time by placing thee[sic] exact same prisoner who assaulted the plaintiff with malicious intent of another attack against the plaintiff on December 1st, 2016. The plaintiff was in thee[sic] exact same holding cell #3 awaiting transfer with the assailant. The defendant's[sic] Allen & Bobbitt already had been

---

[6]  To state a retaliation claim, an inmate must show he was denied a benefit because he exercised a First Amendment right. Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). In his grievance and his Complaint, Plaintiff does not show any assertion of a First Amendment right. Instead, he grieves being left in a holding cell with an inmate who had attacked him 10 days prior and alleges staff at GSP placed him there intentionally. Doc. 34-4 at 2–3. Plaintiff accuses GSP staff with having a retaliatory motive, but the proper constitutional claim is based on a failure to protect an inmate from harm.

>   informed of the assault against the plaintiff, and who the assailant was before they sent Mr. Flowers to get the plaintiff.[7]

Doc. 14 at 3. Therefore, sufficient factual grounds existed for the Court to consider a failure to protect claim during frivolity review. Under Federal Rule of Civil Procedure 8(e), "[p]leadings must be construed so as to do justice."

Because Plaintiff pleaded facts supporting a failure to protect claim in his Complaint, he objected to the exclusion of this claim in the Report and Recommendation, and in order to "do justice," the Court now permits Plaintiff's claim for failure to protect to proceed against Defendants Allen, Bobbitt, and Hutcheson. Additionally, because Defendants may not have focused on Plaintiff's failure to protect claim previously, they shall have 21 days from the Court's adoption order to file an answer or pre-answer motion to dismiss as to this remaining claim, provided the Court adopts this Report and Recommendation in full.[8] Given these circumstances, all discovery shall remain stayed, see doc. 38, until lifted by written Court Order.

---

[7] Indeed, in the Court's Report and Recommendation, the Court specifically ordered the parties to file objections "asserting that the Magistrate Judge failed to address any contention raised in the Complaint" within 14 days. Doc. 11 at 18. "Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge." Id. Plaintiff timely filed specific objections to the Report and Recommendation, highlighting the December 1, 2016 incident again. Doc. 14.

[8] To the extent Defendants' arguments in their Motions to Dismiss apply to Plaintiff's failure to protect claim, under the record currently before the Court, it appears Plaintiff has exhausted his administrative remedies. The facts supporting Plaintiff's failure to protect claim were first grieved on January 24, 2017 in the Third Grievance, Number 236004. Doc. 34-4 at 2. Plaintiff filed the Third Grievance out of time, which should constitute a failure to exhaust administrative remedies, as I found with the Fourth Grievance. The Court also recognizes that Defendants, in their Motions to Dismiss, point out that Plaintiff did not appeal this grievance and, as such, failed to exhaust his administrative remedies under Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008). Doc. 34-1 at 4 ("A prisoner must complete each step in the administrative process before filing a complaint in federal court, including the appeal of grievances."). However, one key fact distinguishes the Third and Fourth Grievances which supports my finding that Plaintiff did exhaust his administrative remedies with respect to his failure to protect claim. Plaintiff's Third Grievance was rejected on the merits as unsubstantiated, not on procedural grounds, i.e., untimeliness. Doc. 34-4 at 8–9. "A procedural flaw ignored by a prison cannot later be resurrected by the District Court to defeat exhaustion." Whatley I, 802 F.3d at 1215. Because the GDC elected not to enforce its own rules and reject the Third Grievance for untimeliness, I cannot find a lack of exhaustion

### III.     Plaintiff's Motions

Plaintiff has filed three Motions in this case.  First, Plaintiff has moved for appointment of counsel.  Doc. 20.  Second, Plaintiff has moved for default judgment against Defendant Hutcheson.  Doc. 36.  Third, Plaintiff has moved for an evidentiary hearing to assess the credibility of Defendants' evidence.  Doc. 43.  The Court reviews Plaintiff's pending Motions.

####     A.     Appointment of Counsel

Plaintiff states he cannot afford counsel and that his ability to litigate this case will be limited due to his incarcerated status and injuries to his hands.  Doc. 20.  In this civil case, Plaintiff has no constitutional right to the appointment of counsel.  Wright v. Langford, 562 F. App'x 769, 777 (11th Cir. 2014) (citing Bass v. Perrin, 170 F.3d 1312, 1320 (11th Cir. 1999)). "Although a court may, pursuant to 28 U.S.C. § 1915(e)(1), appoint counsel for an indigent plaintiff, it has broad discretion in making this decision, and should appoint counsel only in exceptional circumstances." Wright, 562 F. App'x at 777 (citing Bass, 170 F.3d at 1320). Appointment of counsel in a civil case is a "privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner."  Fowler v. Jones, 899 F.2d 1088, 1096 (11th Cir. 1990) (citing Poole v. Lambert, 819 F.2d 1025, 1028 (11th Cir. 1987), and Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir. 1985)).  The Eleventh Circuit Court of Appeals has explained that "the key" to assessing whether counsel should be appointed "is whether the *pro se* litigant needs help

---

on those grounds.  As noted in Whatley I, "[A] prisoner has exhausted his administrative remedies when prison officials decide a procedurally flawed grievance on the merits."  Id.  Whatley I supports the finding that, even where an inmate fails to fully appeal a rejected grievance through every stage of administrative review, if the administrative body addresses and decides a prisoner's grievance on the merits the prison waives an exhaustion defense.  Id. at 1215–17.  Therefore, based on the record presently before the Court, Defendants' failure to exhaust defense would likely not defeat this claim.  However, this is not to say Defendants cannot move for dismissal of this claim based on failure to exhaust administrative remedies. Defendants should, however, be cognizant of the issues described here.

in presenting the essential merits of his or her position to the court. Where the facts and issues are simple, he or she usually will not need such help." McDaniels v. Lee, 405 F. App'x 456, 457 (11th Cir. 2010) (quoting Kilgo v. Ricks, 983 F.2d 189, 193 (11th Cir. 1993)).

The Court has reviewed the record and pleadings in this case and finds no "exceptional circumstances" warranting the appointment of counsel. While the Court understands that Plaintiff is incarcerated, this Court has repeatedly found that "prisoners do not receive special consideration notwithstanding the challenges of litigating a case while incarcerated." Hampton v. Peeples, No. CV 614-104, 2015 WL 4112435, at *2 (S.D. Ga. July 7, 2015). "Indeed, the Eleventh Circuit has consistently upheld district courts' decisions to refuse appointment of counsel in 42 U.S.C. § 1983 actions similar to this case for want of exceptional circumstances." Id. (citing Smith v. Warden, Hardee Corr. Inst., 597 F. App'x 1027, 1030 (11th Cir. 2015); Wright, 562 F. App'x at 777; Faulkner v. Monroe Cty. Sheriff's Dep't, 523 F. App'x 696, 702 (11th Cir. 2013); McDaniels v. Lee, 405 F. App'x 456, 457 (11th Cir. 2010); Sims v. Nguyen, 403 F. App'x 410, 414 (11th Cir. 2010); Fowler, 899 F.2d at 1091, 1096; Wahl, 773 F.2d at 1174). As Plaintiff's numerous pleadings, responses, and objections to date demonstrate, this case is not so complex legally or factually to prevent Plaintiff from presenting "the essential merits of his position" to the Court. For these reasons, the Court **DENIES** Plaintiff's Motion for Appointment of Counsel.

### B. Default Judgment

Regarding Plaintiff's Motion for Default Judgment, doc. 36, Defendant Hutcheson timely responded to Plaintiff's Complaint based on the deadlines set by the Court's Order. Docs. 24, 34. The Magistrate Judge originally recommended Plaintiff's claims against Defendant Hutcheson for deliberate indifference to safety as to dorm assignment be dismissed. Doc. 11.

However, in light of Plaintiff's objections to the Court's Report and Recommendation, in which he alleged Defendants Jackson and Hutcheson had the ability to change Plaintiff's dorm assignment but failed to do so, doc. 14, the District Judge sustained, in part, Plaintiff's objection and permitted the deliberate indifference claim to proceed against Defendant Hutcheson.  Doc. 24.  That is why Defendant Hutcheson's Motion to Dismiss was filed so long after the other Defendants' Motions.  Hutcheson was added back to the case in the District Judge's March 7, 2018 Order, Hutcheson executed a waiver of service on March 12, 2018, and then Hutcheson filed a Motion to Dismiss exactly 60 days later on May 11, 2018.  Docs. 24, 27, 34.  Defendant Hutcheson timely responded; thus, the Court **DENIES** Plaintiff's Motion for Default Judgment.

### C.     Evidentiary Hearing

Plaintiff claims Defendants forged his signature on multiple grievance forms, specifically the Warden's/Superintendent's Grievance Response to Plaintiff's Second Grievance, doc. 34-6 at 7, and the Warden's/Superintendent's Grievance Response to Plaintiff's Third Grievance.  Doc. 34-4 at 9.  As established, the contents of Plaintiff's Second Grievance are not germane to the instant action.  Furthermore, based on the current record, whether Plaintiff received and acknowledged with his signature the Warden's/Superintendent's Grievance Response to his Third Grievance will not prove Plaintiff exhausted his administrative remedies.  See *supra* n.8.  Therefore, there is no need for an evidentiary hearing at this time, and the Court **DENIES** Plaintiff's Motion.

### CONCLUSION

For the above reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motions to Dismiss and **DISMISS** Plaintiff's claims of deliberate indifference to safety in dormitory assignment and as to serious medical needs.  Docs. 16, 29, 34.  Nonetheless, I do not recommend

full dismissal of Plaintiff's Complaint; instead, I find Plaintiff states a non-frivolous claim for failure to protect. Should the Court adopt my Recommendation, Defendants Allen, Hutcheson, and Bobbitt shall have 21 days from the order to file an answer or pre-answer motion to dismiss as to Plaintiff's remaining claim. Finally, I **DENY** Plaintiff's Motions for Appointment of Counsel, Default Judgment, and an Evidentiary Hearing. Docs. 20, 36, 43.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 3rd day of January, 2020.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA